## JOHN B. PAGE v. BAXTER NATIONAL BANK.

B. having a contract with the government to furnish headstones for soldiers' graves and, being indebted to both the plaintiff and defendant, ordered all checks due for his work to be made payab'e to the defendant, and directed the defendant to first pay a $1000 note which it held against him, and then to pay the plaintiff, The check came payable to B. He carried it to the bank, and by his agreement it was applied on what he owed the bank and C. *Held*, that the plaintiff could not recover; as the defendant never had control of the check, or its proceeds.

ASSUMPSIT. Plea, general issue. Trial by court, September Term, 1882, VEAZEY, J., presiding. Judgment for the defendant. It appeared that, on July 23d, 1880, one S. G. Bridges had a contract with the U. S. government for furnishing and erecting marble headstones for soldiers' graves, and that he was borrowing money to use in executing his contract. About May 31st of that year, his note for $1000, endorsed by J. W. Cramton, J. N. Baxter and G. E. Royce, three of the directors of the defendant bank, was discounted by said bank, and held by it until paid, as hereafter stated.

Among other securities given by him to the endorsers, were certain government vouchers, signed in blank, accompanied by a letter as follows:

" May 31, 1880. Col. A. F. Rockwell, A. Q. M., U. S. A., Washington, D. C. Sir: Please forward amounts as they may be due us, for the execution of my contract for headstones, to the Baxter National Bank, Rutland, Vt. Enclosed please find two sets signed vouchers. Respectfully yours, Sam. G. Bridges."

The vouchers and letters were kept by Baxter, in his desk, in the bank, of which he was vice-president, upon the understanding with Bridges, that they were not to be forwarded to Col. Rockwell until the work upon certain cemeteries was completed and the pay due.

Cramton also held Bridges' note for $550, which was unsecured, and the existence of which was not known to the plaintiff, or to Baxter.

On or about said 23d of July, Bridges obtained from the plaintiff an advance of $250 ; and the plaintiff also endorsed Bridges' note for $1200, payable at the Rutland County National Bank, which was discounted by the latter bank, and has been since paid by plaintiff as such endorser. The indebtedness of $1450 remains unpaid by Bridges.

By way of security for the $1000 note and the $1450 liability, Bridges on July 23d signed the following letter, which was at once mailed to Col. Rockwell, viz :

" July 23, 1880. Col. A. F. Rockwell, A. Q. M., U. S. A., Washington, D. C. Sir : Transacting business at the Baxter National Bank of Rutland, Vt., hereby request that checks be sent payable to the above bank when due me for the completion of headstone work. Respectfully yours, Sam. G. Bridges."

And he also signed the following notice, addressed to the defendant, to wit :

" Rutland, Vt., 23d July, 1880. Baxter National Bank : Having made all moneys to become due me upon my government contract payable to you, you will please, out of the first proceeds thereof, pay my note for $1,000, which is payable at your bank ; and next, certain notes or indebtednesses to the amount of $1,450 for which I am responsible to John B. Page, being an advance of $250, and a note for $1,200, endorsed by him, and payable at the Rutland County National Bank. Sam. G. Bridges."

Which order was on the same day at the bank delivered to Baxter, for the bank ; and he understood that it was delivered to him for the bank. Baxter was at the same time informed that said last letter had been mailed to Col. Rockwell. He put the order in his private desk with the other papers, supposing that he was to receive information when work was completed for which pay would become due, and did not inform the cashier of the existence of the order. He held vouchers signed by Bridges in blank, and supposed they would have to be filled out and sent to the government, and that when a draft should come payable to the bank, the cashier would inquire as to what disposition should be made of the proceeds.

Afterwards, on November 5, 1880, Bridges called for the order and signed the following, then written by Baxter at Bridges' request, at the foot thereof :

" Rutland, Vt., 5th Nov. 1880. To Baxter National Bank: The above note, of $1,450, having been extended, I hereby request that the first moneys coming to you hereby, by virtue of said government contract, be appropriated to the payment of said $1,000 note and the expenses of completion of Spring Grove and Green Lawn Cemeteries, located at Cincinnati and Columbus, Ohio, respectively. Sam. G. Bridges."

And the order was again replaced by Baxter in his desk. The $1,450 debt had not been extended; and the plaintiff had no knowledge of the attempted modification of the order, and never consented thereto.

Afterwards, on November 16, 1880, Bridges received a U. S. treasury draft or check, payable to his own order, for $1,590,28, due him under said contract. He took the same to Cramton, and wanted to pay his note due him out of the draft, and to keep the balance, and have further time on the note of $1,000, due at the Baxter Bank. Cramton declined to extend the time, and insisted that the bank note, then overdue, should also be paid. Bridges acceded, and they both went into the bank and delivered the same, endorsed in blank by Bridges, to the cashier, who, by direction of Bridges and Cramton, gave Bridges credit for the amount thereof on his private account, on the books of the bank, and charged said account with the sum of $1,008,10, the amount due on the $1,000 note, and with $550, which was at the same time credited to Cramton, whereby said $1,000 note and said $550 note were paid ; the remainder of the proceeds of the draft, being $32.18, was applied on an existing overdraft in Bridges' account, leaving a balance of $42.37 still due on the overdraft for which he afterwards gave the bank security. Neither the cashier nor Cramton knew of the order which Baxter held as aforesaid ; nor of Bridges' obligation to Page. Nor did Baxter know at the time that Bridges had received the draft, nor of his disposition of it. The plaintiff afterwards called on defendant for a statement of the amount, if any, received by it on Bridges' contract, and was informed of the draft and the way the proceeds had been appropriated, and claimed the balance of the proceeds after payment of the $1,000 note, being $582.10, which the bank refused to pay him.

All parties acted in good faith, except Bridges.

*F. G. Swinington* and *Prout & Walker*, for the plaintiff.

*W. C. Dunton* and *Edward Dana* for the defendant.

The opinion of the court was delivered by

TAFT, J.   Bridges ordered the government to make all checks due him for head-stone work, payable to the defendant, and directed it to pay the plaintiff out of the moneys received on such checks.   The check in question was not made payable to the defendant, and no money ever came into its hands by virtue of the order.   We cannot hold that the transactions at the bank, when the check was paid, constituted a reception by it of the funds in question, for the purposes contemplated by the parties when the order was given.   The check was payable to Bridges, and nothing in the case shows that the defendant could by any means have obtained control of it, or of its proceeds; it was in no fault in respect to it, and the contingency upon which it was to pay the plaintiff, never happened.   Upon this ground the defendant is entitled to judgment without regard to the other questions, in the case, which are not passed upon.

There was no error in the judgment below, which is affirmed.